RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-4170-15T1

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

 Plaintiff-Respondent,
v.

S.G.,

 Defendant-Appellant.
_________________________________

IN THE MATTER OF THE GUARDIANSHIP
OF S.H.G.,

 Minor.
_________________________________

 Submitted March 29, 2017 – Decided July 20, 2017

 Before Judges Fuentes, Simonelli and Carroll.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Essex County,
 Docket No. FG-07-0232-15.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Cary L. Winslow, Designated
 Counsel, on the brief).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Andrea M. Silkowitz,
 Assistant Attorney General, of counsel; Fatime
 Meka, Deputy Attorney General, on the brief).
 Joseph E. Krakora, Public Defender, Law
 Guardian, attorney for minor (Sean P. Lardner,
 Designated Counsel, on the brief).

PER CURIAM

 Defendant S.G. is the biological mother of S.H.G., a boy born

in April 2012. The boy's biological father is dead. Defendant

appeals from the Judgment of Guardianship entered by the Family

Part on May 13, 2016, terminating her parental rights to her son.

The guardianship judgment permits S.H.G. to be adopted by his

maternal grandmother and her husband. Defendant is also the

biological mother of S.H., a girl born in October 2005. S.H has

a different biological father from S.H.G. This guardianship

petition originally sought to terminate defendant's parental

rights over S.H., but these plans changed to reunification with

the child's biological father. Thus, S.H. is not a part of this

appeal.

 In this appeal, defendant argues the Division of Child

Protection and Permanency (Division) failed to establish by clear

and convincing evidence the four statutory prongs in N.J.S.A.

20:4C-15.1a governing the best interests of the child. Defendant

also maintains the Division did not establish that kinship legal

guardianship (KLG) under N.J.S.A. 3B:12A-6 was not a viable option

to termination. After reviewing the record and mindful of our

standard of review, we affirm substantially for the reasons

 2 A-4170-15T1
expressed by Judge David B. Katz in his oral opinion delivered

from the bench on May 13, 2016.

 Before discussing the evidence presented at the guardianship

trial, we will first briefly summarize defendant's history of

involvement with the Division. On February 8, 2012, the Division

received an anonymous referral that defendant was driving around

all hours of the day and night with S.H., who was then six years

old. Defendant was pregnant with S.H.G. at the time. The

anonymous reporter claimed to have seen defendant drinking alcohol

and smoking marijuana despite being pregnant. After investigating

the allegations, the Division concluded they were unfounded.

 The Division received another referral concerning defendant

on December 4, 2013. At the time, S.H.G.'s late father was

contesting his child support obligation. He alleged he saw

defendant consume alcohol and become inebriated around her

children. He also claimed defendant suffered from bipolar

disorder. Defendant declined the Division's offer of assistance.

The Division also concluded the allegations were unfounded.

 The next complaint the Division received came from

defendant's mother and sister. On April 1, 2014, they reported

being concerned over the children's well-being because of

defendant's substance abuse problem. Defendant was allegedly

using embalming fluid. Although defendant denied the allegations,

 3 A-4170-15T1
S.H., who was then eight years old, told Division investigators

that she did not feel safe around her mother. According to the

child, defendant had been acting "weird," like a "zombie."

Defendant eventually admitted to the Division caseworker that she

had been using Phencyclidine (PCP) as much as three times per

week.

 On April 1, 2014, defendant tested positive for PCP in a test

administered by the Newark Renaissance House. The Division

executed an emergent Dodd removal1 of S.H.G. that same day and

placed him with his maternal aunt. On June 18, 2014, S.H.G. was

relocated by the Division to his maternal grandmother's house. He

remained in her care from that day forward, including throughout

the guardianship trial.

 The guardianship trial occurred on May 10, 2016. The Division

presented the testimony of two witnesses, psychologist Dr. Mark

Singer and Division caseworker Arianna Concepcion. Neither the

Law Guardian nor defendant called any witnesses. Judge Katz's

findings were based entirely on the testimony of these two

witnesses and the documentary evidence admitted without objection.

1
 "A 'Dodd removal' refers to the emergency removal of a child
from the home without a court order, pursuant to the Dodd Act,
which, as amended, is found at N.J.S.A. 9:6-8.21 to -8.82. The
Act was authored by former Senate President Frank J. 'Pat' Dodd
in 1974." N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J.
Super. 593, 609 n.2 (App. Div. 2010).

 4 A-4170-15T1
 Judge Katz found these witnesses credible. Defendant was

thirty-seven years old when this matter was tried before Judge

Katz. She admitted to smoking PCP since she was in her mid-

twenties. Although she denied using cocaine, heroin, or any other

opiates, she tested positive for cocaine when she was tested in

the courthouse. She has been treated for mental illness in an

intensive outpatient setting. She was admitted into inpatient

substance abuse rehabilitation programs, but tested positive for

PCP numerous times while she was there.

 Judge Katz found that during the first year after the removal

of S.H.G., the Division arranged for defendant to receive substance

abuse assessment and treatment in many different inpatient

programs. She has received domestic violence counseling,

psychological and psychiatric evaluations, referrals to "Mommy and

Me" programs, psychotherapy, and parenting skills classes. She

consistently failed to take advantage of these services.

 With respect to defendant's ability or willingness to safely

parent her son, Judge Katz found that Dr. Singer "had a command

of the facts and the psychological principles that he applied to

those facts." Judge Katz accepted Dr. Singer's opinion that

defendant's continued use of PCP under these circumstances

demonstrated her inability to create stability in her life. This

also created an unstable environment for her son. Her failure to

 5 A-4170-15T1
take advantage of the services made available to her by the

Division was also indicative of her inability to change, at least

in the foreseeable future.

 With respect to S.H.G., Judge Katz relied on Dr. Singer's

testimony to find that the child "has a significant attachment to

[defendant]." However, the maternal grandmother, as the

caregiver, has also become "a significant parental figure in

S.H.G.'s life." Although both of these women played an important

role in the child's life, Judge Katz accepted Dr. Singer's

assessment that the caregiver could mitigate the emotional harm

caused by severing S.H.G.'s relationship with defendant. In fact,

Dr. Singer opined that S.H.G. would be at risk of harm if reunified

with his biological mother. In short, reunification with defendant

was not in the child's best interest.

 Based on the evidence presented, Judge Katz applied the

settled principles of law and carefully considered each of the

four prongs in N.J.S.A. 30:4C-15.1a as construed by the Supreme

Court in In re Guardianship of K.H.O., 161 N.J. 337, 348-52 (1999).

We are satisfied the Division proved each of the four statutory

prongs by clear and convincing evidence. We will not repeat Judge

Katz's comprehensive review of the evidence and the legal

conclusions that he made therefrom. We discern no legal basis to

disturb Judge Katz's findings or to question his legal analysis.

 6 A-4170-15T1
 The evidence presented by the Division is uncontroverted. We

defer to Judge Katz's credibility assessment of the witnesses'

testimony because of his expertise in family matters and his

ability to develop a "feel of the case that can never be realized

by a review of the cold record." N.J. Div. of Youth & Family

Servs. v. M.C. III, 201 N.J. 328, 342-43 (2010) (citation omitted).

We thus affirm substantially for the reasons he expressed in his

oral opinions that he delivered from the bench on May 13, 2016.

 Affirmed.

 7 A-4170-15T1